## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **PEDRO LUIS RAMOS, III,** | : | **CIVIL ACTION NO.** |
| **individually and on behalf of persons** | : | |
| **similarly situated,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ADP SCREENING AND SELECTION** | : | |
| **SERVICES, INC.** | : | |
| **Defendant** | : | **MAY 10, 2023** |

## CLASS ACTION COMPLAINT

### I.    INTRODUCTION

1.      Consumer reporting agencies ("CRAs") "must follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual" about whom a background report relates. Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e(b). If they do not, and harm is caused, they are liable. 15 U.S.C. §§ 1681n & 1681o. Where a CRA's file contains internally inconsistent information about a consumer, a court may conclude that its procedures did not meet the requirements of the FCRA. *See Wenning v. On-Site Manager, Inc.*, 2016 WL 3538379, *16 (S.D.N.Y. June 22, 2016) ("[I]n some circumstances, 'inaccurate credit reports by themselves can be fairly read as evidencing unreasonable procedures,' e.g., where a plaintiff's file contains internally inconsistent information.*"; quoting and discussing *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51 (D.C. Cir. 1984)).

2.      Here, Defendant ADP Screening and Selection Services, Inc., ("ADP-SASS") sold and delivered a background report to New Benevis, Inc. regarding Plaintiff Pedro Luis Ramos III in connection with his job application which falsely alleged that he was a convicted drug dealer. Defendant ADP-SASS included these allegations in Plaintiff's report even though

its own internal "ADP Crim Radar" database indicated that Plaintiff had no criminal convictions. It relied on erroneous information manually uploaded into its system by a vendor, rather than require the vendor to upload photographs of the actual court records so it could review them itself. In reliance on this false report, New Benevis, Inc. withdrew its job offer to Plaintiff.

3.     Defendant ADP-SASS failed to "follow reasonable procedures designed to assure maximum possible accuracy" when conducting background investigations on Plaintiff and other job applicants around the country. As a matter of procedure, Defendant does not conduct additional investigation when its file contains internally inconsistent information. Also, Defendant chooses to rely on manually entered data about individuals rather than have the documents themselves uploaded.

4.     ADP-SASS has willfully used these unreasonable and inaccurate procedures, when preparing and delivering background reports about job applicants to employers. As a result, over the past two years, Defendant has sent thousands of false background reports regarding job applicants around the country, causing them to lose job opportunities and financial harm. Under the FCRA, Defendant should be held liable for statutory damages in an amount up to $1,000 per class member, punitive damages, attorneys' fees and costs. 15 U.S.C. § 1681n.

## II.    JURISDICTION AND VENUE

5.     The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

6.     Venue is proper under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred here in Connecticut.

### III.    PARTIES

7.    Defendant ADP-SASS is a corporation organized under the laws of the State of Colorado with its principal place of business in Roseland, New Jersey.

8.    Defendant ADP-SASS is a "CRA" within the meaning of 15 U.S.C. § 1681a(f).

9.    Plaintiff is an individual residing in New Britain, Connecticut at all times relevant to this complaint.

### IV.    LEGAL PRINCIPLES

10.    Background-check screening accuracy is crucial to the U.S. labor market. According to a 2018 survey, 95% of employers conduct one or more types of background screening; and 94% of those include some form of criminal history check. CONSUMER FIN. PROT. BUREAU, *Market Snapshot: Background Screening Reports. Criminal Background Checks in Employment*, pg. 4 (Oct. 2019).[1] An inaccurate or misleading criminal history report can derail job offers, leaving job-seekers unemployed for significant periods of time. *See Williams v. First Advantage LNS Screening Solutions, Inc.*, 238 F. Supp. 3d 1333, 1341-42 (N.D. Fla. 2017), *aff'd in part* 947 F.3d 735 (inaccurate First Advantage background check reports caused plaintiff to lose two job offers, leaving him unemployed for several months).

11.    Recognizing that the accuracy of background-check reports can have a significant impact on people's lives, Congress chose to regulate the procurement, use, and content of consumer reports through the FCRA, 15 U.S.C. §§1681a, *et seq*. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

---

[1] Available at *https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf*.

3

12.     "Whenever a [CRA] prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15. U.S.C. § 1681e(b). "A report is inaccurate under the FCRA when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to have an adverse effect.' *Fernandez v. Rentgrow, Inc.,* 341 F.R.D. 174, 191 (D. Md. 2022) (internal alterations omitted; collecting cases).

13.     "Courts have held CRAs must look beyond information furnished to them **when it is inconsistent with the CRAs' own records**, contains a facial inaccuracy, or comes from an unreliable source." *Wright v. Experian Info. Sols., Inc.,* 805 F.3d 1232, 1239 (10th Cir. 2015) (collecting cases; emphasis added).

14.     The FCRA provides for an award of statutory damages "of not less than $100 and not more than $1,000," 15 U.S.C. § 1681n(a)(1)(A), and punitive damages for willful noncompliance with the statute in an amount "as the court may allow." 15 U.S.C. § 1681n(a)(2). While malice or evil motive is not required to award punitive damages the defendant must have committed a willful violation by knowingly and intentionally committing an act in conscious disregard for the rights of others. *Stevenson v. TRW Inc.,* 987 F.2d 288, 293–94 (5th Cir. 1993).

**V.     FACTS**

15.     Defendant ADP-SASS has been in the business of providing pre-employment background checks to employers for over 30 years. ADP, *Background Checks for Employment, available at* https://www.adp.com/what-we-offer/talent/talent-acquisition/employment-background-checks.aspx ("Backed by more than 30 years of experience, ADP® Screening and Selection Services offers a full suite of background screening services…") (last visited May 10, 2023).

16.     Defendant ADP-SASS advertises its "fast" and "automated" background screening processes on its website and to prospective customers. ADP, LLC, *Background Checks for Employment* ("Reduce your time-to-hire with fast background check services[.] Accelerate your hiring process with automation from ADP to help you get timely and accurate employment background checks."); ADP, LLC, *ADP's Proposal to Region 4 Educational Service Center*, pg. 5 ("While turnaround times for report results vary depending on the data source, ***ADP offers the fastest turnaround times available in the market***. We fulfill most background checks in fewer than three business days, and many of our report results are returned instantly."; emphasis added).[2]

17.     Defendant conducts over 10 million pre-employment background checks annually, and claims an accuracy rate of "greater than 99 percent." ADP, LLC, *ADP's Proposal to Region 4*, pg. 5. Accordingly, Defendant admits that it prepares about 100,000 inaccurate reports annually.

18.     Plaintiff Pedro L. Ramos III, a resident of New Britain, Connecticut applied for a position as a Part Time Patient Coordinator with New Benevis, Inc. and its Sutton Dental & Braces office located in New Britain, Connecticut.

19.     On August 10, 2022, New Benevis, Inc. offered Plaintiff that position conditioned on the completion of a successful criminal background check.

20.     New Benevis Inc. hired Defendant ADP-SASS to perform a criminal background check on Plaintiff and produce a consumer report on him for employment purposes.

---

[2] *available at* https://www.adp.com/-/media/adp/resourcehub/pdf/omnia-partners/adp-omnia-partners-sass-contract-pricing-redacted.pdf?rev=7ca7f42e9e3c431889ce9de2d4b1e82a&hash=C673421D81863C962C7878A7BC65A26C (Aug. 15, 2019).

5

21.     Defendant conducted a criminal background investigation on Plaintiff using its own proprietary software called "ADP Crim Radar," and found no criminal records for Plaintiff.

22.     Defendant also hired a third-party vendor to check the criminal records from Hartford County in Connecticut.

23.     That vendor went to the Hartford, Connecticut criminal courthouse to investigate Plaintiff's background from that courthouse's records.

24.     That vendor, pursuant to ADP-SASS' procedures, manually entered information he found into ADP-SASS' proprietary software.

25.     In doing so, the vendor erroneously reported that Plaintiff Pedro L. Ramos III had four criminal (4) convictions that in fact belonged to a different Pedro Ramos. Among the convictions, the vendor reported that Plaintiff had a felony conviction of possession with intent to sell/dispense, a misdemeanor conviction for interfering with an officer/resisting arrest, and a conviction for reckless driving.

26.     The vendor also erroneously reported that the date of birth associated with the four (4) convictions matched Plaintiff's date of birth.

27.     Defendant ADP-SASS could have employed a procedure requiring its vendors to photograph the actual records and upload them to Defendant directly so it could review and assure that the contents applied to Plaintiff but chose not to.

28.     Defendant ADP-SASS failed to take additional steps to investigate whether Plaintiff Pedro L. Ramos III and "Pedro Ramos" were the same person after receiving information that Plaintiff had a serious felony conviction that was inconsistent with its Crim Radar database, which showed that he had no criminal convictions.

29.     For example, Defendant did not:

    a.   contact the Hartford Criminal Court to confirm whether Plaintiff Pedro L. Ramos III was in fact "Pedro Ramos";

    b.   obtain and review the actual physical records of the criminal convictions itself; or

    c.   contact Plaintiff Pedro L. Ramos III to confirm with him whether he was "Pedro Ramos".

30.     If Defendant ADP-SASS had obtained the actual criminal files for the dockets it cited in Plaintiff Pedro L. Ramos III's background report, it would have immediately realized that Plaintiff and "Pedro Ramos" were different people. For example,

    a.   "Pedro Ramos" has a different birth date than Plaintiff Pedro L. Ramos III;

    b.   "Pedro Ramos" has a different social security number than Plaintiff Pedro L. Ramos III;

    c.   "Pedro Ramos" has lived at different street addresses than Plaintiff Pedro L. Ramos III has; and

    d.   "Pedro Ramos" lives in a different city than Plaintiff Pedro L. Ramos III.

31.     Defendant ADP-SASS has a procedure allowing consumers to dispute information contained in their consumer reports *after* it sends them to the employer.

32.     Defendant did not give Plaintiff the opportunity to dispute the criminal convictions before reporting them to New Benevis, Inc.

33.     Instead, on or about August 30, 2022, Defendant ADP-SASS sent New Benevis, Inc. Plaintiff's consumer report including the four (4) convictions that did not belong to him.

34.     Defendant ADP-SASS falsely reported to New Benveis, Inc. that the "dates of birth listed in [the] case" for the four (4) convictions matched Plaintiff's date of birth.

35.     In fact, "Pedro Ramos" was born on a different day and in a different month than Plaintiff Pedro L. Ramos III, as clearly indicated by the actual court file.

36.     New Benevis, Inc., in reliance on Defendant ADP-SASS' inaccurate report, withdrew its job offer to Plaintiff. On September 02, 2022, Lisa Lavoie, on behalf of New Benevis, Inc., sent an email to Plaintiff which stated:

> *Hi Pedro, I wanted to let you know that we are not going to be able to move forward with your employment at Sutton Dental & Braces for the Patient Coordinator role.* ***You did not clear the background check process*** *and will be receiving a formal notification/adverse action letter from Benevis.* (emphasis added)

37.     On or about October 13, 2022, Plaintiff went onto Defendant ADP-SASS' website and disputed the contents of his consumer report.

38.     In response, Defendant ADP-SASS removed the four (4) convictions from Plaintiff's consumer report.

39.     Defendant's failure to "follow reasonable procedures to assure maximum possible accuracy" of the background checks it sells for employment purposes is not limited to Plaintiff.

40.     As a direct and proximate result of Defendant's failure to "follow reasonable procedures to assure maximum possible accuracy" of the background reports it sells for employment purposes, Plaintiff and other similarly situated individuals have suffered damages.

## VI.     CLASS ALLEGATIONS

41.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of a class of similarly situated individuals as defined below:

### *The 15 U.S.C. § 1681e(b) Class ("Reasonable Procedures" Class)*

All individuals residing in the United States about whom ADP – SASS performed a background investigation, and sold a background report to a third party for employment purposes from May 10, 2021 until final judgment in this matter, that individual then disputed the contents of that report, and ADP-SASS then removed the disputed content from that individual's background report.

8

42.     Class certification of the "15 U.S.C. § 1681e(b) Class" is appropriate under Rule 23 of the Federal Rules of Civil Procedure.

43.     The class is so numerous that joinder of all members is impracticable. Upon information and belief, there are hundreds or thousands of individuals within the class definition.

44.     There are questions of law and fact common to the class, including whether Defendant employed reasonable procedures to assure maximum possible accuracy of their consumer reports as to the class.

45.     The claims of Plaintiff are typical of those of the class members. The claims of the Plaintiff encompass the challenged practices and course of conduct of Defendant. Furthermore, the claims of Plaintiff are based on the same legal theories as the claims of the putative class members. The legal issues as to the violation of the FCRA apply equally to Plaintiff and the class.

46.     Plaintiff will fairly and adequately protect the interests of the class. The claims of the Plaintiff are not antagonistic to those of the putative class, and he hired counsel skilled in the prosecution of class actions.

47.     Common questions of law and fact predominate over questions affecting only individuals.

48.     This proposed class action is the superior method of adjudications because it presents few management difficulties, conserves the resources of the parties and the court system, protects the rights of each class member and maximizes recovery to them.

## VII.   CAUSES OF ACTION

**COUNT 1:   WILLFUL VIOLATION OF 15 U.S.C. § 1681e(b) AS TO PLAINTIFF AND THE CLASS**

49.     Defendant willfully violated 15 U.S.C. § 1681e(b) as to Plaintiff and the class by failing to "follow reasonable procedures to assure maximum possible accuracy" of the consumer reports it sold to third parties for employment purposes.

50.     Based on the above, Defendant ADP-SASS willfully and as a matter of procedure relies on its vendors to manually input information about individuals it is performing background checks on rather than photograph and upload the actual records so that Defendant can review them and make sure they are accurately cited in the background reports they prepare.

51.     Based on the above, Defendant ADP-SASS willfully and as a matter of procedure fails to take additional steps to investigate information it receives from other sources that conflicts with information contained in its own internal databases before sending out background reports about those individuals.

52.     Defendant willfully employs these procedures knowing that there is a significant risk that it will result in inaccuracies in the background reports of job applicants and employees that it sends to employers.

53.     As a direct and proximate result of Defendant's ADP-SASS' willful violation of the FCRA, Defendant is liable to Plaintiff and the class for statutory damages "of not less than $100 and not more than $1,000," punitive damages, and attorney fees and costs under 15 U.S.C. § 1681n.

**COUNT 2:**     **NEGLIGENT VIOLATION OF 15 U.S.C. § 1681e(b) AS TO PLAINTIFF INDIVIDUALLY**

54.     Defendant ADP-SASS negligently violated 15 U.S.C. § 1681e(b) as to Plaintiff by failing to "follow reasonable procedures to assure maximum possible accuracy" of his background report before sending it to New Benevis, Inc. in connection with his job application.

55.     Defendant had notice that Plaintiff's consumer report might erroneously label Plaintiff a criminal because its own Crim Radar software determined that he did not have a criminal record.

56.     Defendant knew that it could have required its vendor to take pictures and upload the actual criminal files he found and review them in-house to make assure Plaintiff's background report was accurate but chose not to.

57.     Defendant knew that it could quickly obtain the actual public records themselves at little to no cost, and confirm whether Plaintiff Pedro L. Ramos III and "Pedro Ramos" were the same person.

58.     Defendant knew that the name Pedro Ramos was a common name and that it was probable that there were more than one Pedro Ramos in Connecticut.

59.     Defendant negligently chose not to take additional steps to confirm whether Plaintiff Pedro L. Ramos III and "Pedro Ramos" were the same person and sent the background report to New Benevis, Inc. despite the high risk that it falsely accused him of having a criminal record.

60.     As a direct and proximate result of Defendant ADP-SASS' negligent violation of the FCRA, Defendant is liable to Plaintiff for "actual damages," including emotional distress damages, reputational damages, and attorney fees and costs under 15 U.S.C. § 1681o.

## VIII.   DEMAND FOR RELIEF

WHEREFORE, the Plaintiff claims:

**AS TO COUNT 1:**

1. Certification of this case as a class action;

2. Appointment of Plaintiff as class representative;

3. Appointment of Plaintiff's counsel as class counsel;

4. Statutory damages in an amount up to $1,000 per person under 15 U.S.C. § 1681n;

5. Punitive damages under 15 U.S.C. § 1681n;

6. Attorney's fees and costs under 15 U.S.C. § 1681n;

7. A jury for all claims which may be tried to a jury; and

8. Any and all other relief as the court deems just and proper.


**AS TO COUNT 2:**

1. Actual damages, including emotional distress and reputational damages under 15 U.S.C. § 1681o;

2. Attorney's fees and costs under 15 U.S.C. § 1681o;

3. A jury for all claims which may be tried to a jury; and

4. Any and all other relief as the court deems just and proper.

**PLAINTIFF, PEDRO LUIS RAMOS III**,
Individually and on behalf of all similarly
situated individuals.


By:

Richard Hayber, Esq. ct11629
Michael Petela, Esq. ct28251
Thomas Durkin, Esq. ct30371
Hayber, McKenna & Dinsmore, LLC
750 Main Street, Ste 904
Hartford, CT 06103
Phone: (203) 522-8888
Fax: (860) 218-9555
rhayber@hayberlawfirm.com
mpetela@hayberlawfirm.com
tdurkin@hayberlawfirm.com
Attorneys for Plaintiff

13